William A. Reynolds v. Commissioner.
Reynolds v. Commissioner
Docket No. 7434.
United States Tax Court
1946 Tax Ct. Memo LEXIS 151; 5 T.C.M. (CCH) 552; T.C.M. (RIA) 46157; June 28, 1946
Homer H. Marshman, Esq., 1500 Guardian Bldg., Cleveland 14, Ohio, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: The Commissioner determined a deficiency in income tax for 1940 and 1941 in the amounts of $14,886.16 and $38,398.34, respectively. The issue is whether the Commissioner properly determined that all of the net income of the alleged partnership of William A. Reynolds & Co. is taxable to petitioner, William A. Reynolds, for the years 1940 and 1941. A stipulation of facts was filed. We adopt same by reference and find the facts therein set forth. Such parts thereof as it is considered necessary to set forth are included with other facts *152 found from evidence adduced in our Findings of Fact The petitioner, William A. Reynolds, is an individual residing in Shaker Heights, Ohio. Petitioner filed his 1940 and 1941 income tax returns with the collector of internal revenue for the 18th collection district of Ohio, at Cleveland, Ohio. Nelle C. Reynolds was the wife of the petitioner during the taxable years involved herein and at all other times material hereto. Dorothy Reynolds Swander was the daughter of the petitioner. Her maiden name before her marriage on June 21, 1940, to Dan C. Swander, Jr., was Dorothy F. Reynolds. The business of William A. Reynolds & Co. consist primarily of furnishing rubber parts to home appliance manufacturers. The various projects were engineered, that is, they were worked out as to the construction and design standpoint and then placed with the factory that had the equipment best able to handle the work. William A. Reynolds & Co. had some production on which it had exclusive licenses under patents. It contracted for the patents on a royalty basis. William A. Reynolds & Co. had from $3,000 to $4,000 invested in molds and dies for making rubber goods. Petitioner has had long experience *153 in the rubber business, starting out in the engineering department of one of the large rubber companies, then transferring to manufacturing and then to the sales end of the business. At one time, he was District Manager for the U.S. Rubber Co. in New York City. He spent several years working for such organizations as B. F. Goodrich Co., U.S. Rubber Co. and the Ohio Rubber Co. In September, 1930, petitioner and A. H. Basler organized The Reynolds Corporation. Petitioner was president and A. H. Basler was vice president. Elsie Klika was secretary. Two-thirds of the stock of the corporation was owned by petitioner and approximately one-third was owned by Basler, with a few shares being held in the name of Elsie Klika, and with three shares later being owned by Homer H. Marsham. The three officers formed the board of directors until September 19, 1935, when Basler and Klika sold their stock back to the corporation and resigned as directors and officers. Nelle C. Reynolds and Homer H. Marsham then were elected directors and Nelle C. Reynolds was elected vice president. At or about the time Nelle C. Reynolds was elected vice president, and prior to January 1, 1936, petitioner transferred *154 48 shares of stock in The Reynolds Corporation to her. The shares of stock so transferred cost petitioner $100 per share. The three shares held by Homer H. Marsham were purchased by Nelle C. Reynolds in 1936, at a price of $100 a share. The Reynolds Corporation was dissolved in February, 1937, at which time 51 shares of its stock were listed in the name of Nelle C. Reynolds and 6 shares were listed in the name of petitioner. Upon liquidation of The Reynolds Corporation, Nelle C. Reynolds was paid a liquidating dividend totaling $11,131.57. She received the $11,131.57 from The Reynolds Corporation in two checks in the amounts of $4,050, January 30, 1937, which was deposited to the credit of William A. Reynolds & Co., and $7,081.57, August 11, 1937, which she deposited in her own account. A document captioned "Partnership Agreement", dated January 26, 1937, was signed by Dorothy F. Reynolds, Nelle C. Reynolds and petitioner. This document provided, in part, as follows: WITNESSETH: (1) That said Nelle C. Reynolds, Dorothy F. Reynolds and William A. Reynolds will become and remain partners in the business of conducting a general sales agency and manufacturers' agency without limitation, *155 but particularly as to rubber and mechanical rubber goods, in the City of Cleveland, Ohio, from the date of this agreement until such time as the partnership may be dissolved by mutual consent of the respective parties or by due process of law. (2) Nevertheless, the partnership shall terminate if any partner shall desire its termination, and of such desire shall give not less than thirty (30) days' written notice to the other parties. (3) It is further agreed that should any partner desire dissolution of the partnership as herein provided for, then upon such dissolution the remaining parties shall, in proportion to their interest in the profits, at their election, have the first right to purchase the interest of the one or ones desiring release therefrom or dissolution thereof, by the payment to said withdrawing one or ones, his or their heirs or assigns, of the amount of the interest in said partnership as it shall appear at the time of said dissolution, after all debts and other partnership claims shall have been paid. (4) It is further agreed that Nelle C. Reynolds shall furnish 30% of the initial capital required; that Dorothy F. Reynolds shall furnish 70% of the initial *156 capital required; and that William A. Reynolds shall diligently employ himself in the business of the partnership, giving his full time thereto; and the profits therefrom shall be divided as follows: William A. Reynolds, 50%; Dorothy F. Reynolds, 35%; and Nelle C. Reynolds, 15%. (5) No partner shall, without the previous consent in writing of the others, enter into any bond or become security for any person, or do, or willingly suffer to be done anything whereby the capital or property of the partnership may be attached or taken in execution. (6) Books and accounts shall be kept by the partnership and proper entries made therein of all the business of said partnership; that yearly accounts and statements shall be made and prepared by said William A. Reynolds concerning the business and present state thereof, and furnished to all of said partners. (7) The partners shall be entitled to the net profits arising from the said business in accordance with and in such shares hereinbefore specified. (8) Each partner may make and take contracts for and on behalf of the partnership business, but contracts or purchases involving a liability of more than $100.00 shall not be made by any *157 partner other than William A. Reynolds without his approval in writing. (9) This agreement shall be binding and in force, and the terms of this partnership shall be for one year and shall automatically renew itself for one year from year to year thereafter, unless terminated thereby in writing by any of the partners. At the date of the signing of the above instrument, Dorothy F. Reynolds was 20 years of age, and was away from home attending school. A certificate signed by Nelle Reynolds, the petitioner, and Dorothy Reynolds, dated April 22, 1937, was filed on April 27, 1937, with the Clerk of Courts of Cuyahoga County, Ohio, stating that the firm of William A. Reynolds & Co. was composed only of the three persons who signed. The original capital of the alleged partnership was $15,264.70. Of the amount, 30 per cent, or $4,579.41, was credited to the capital account of Nelle C. Reynolds and 70 per cent, or $10,685.29, was credited to the capital account of Dorothy F. Reynolds. The source of the $15,264.70, original capital, was the liquidating dividend of $11,131.57 paid to Nelle C. Reynolds, and an addition of about $4,000 saved by Mrs. Reynolds over the years from her allowance, *158 economical house running, etc. Petitioner had been paying his wife about $600 a month for household purposes. Dorothy repaid her mother about $7,600 of the $10,685.29 credited to her capital account. Dorothy had had some Liberty bonds and gifts from her grandparents as a child, all amounting to about $3,000. The business of William A. Reynolds & Co. continued to operate under the alleged partnership agreement for the years 1937, 1938, and 1939. The net profits for these years were $26,777.67, $19,837.75, and $50,139.09, respectively. At the beginning of the year 1940 there appeared to be no change in the business set-up of William A. Reynolds & Co. In June of that year, Dorothy F. Reynolds married Dan C. Swander, Jr. In October 1940, Dorothy became excited about her husband's situation in regard to the military service and the question of her dependency on him. Papers were prepared to take Dorothy out of the alleged partnership, retroactive to the beginning of the year. These papers, which included the following documents: Agreement of Sale, Cognovit Note and Partnership Agreement, were not signed until January 1941, though the documents themselves carried earlier dates. The *159 document captioned "Agreement of Sale," dated January 13, 1940, was signed by Dorothy F. Reynolds and Nelle C. Reynolds. Said Agreement provided, in part, as follows: WHEREAS, said parties, together with William A. Reynolds, are partners comprising the partnership of William A. Reynolds & Company, and WHEREAS, said Dorothy F. Reynolds is desirous of disposing of her thirty-five per cent (35%) interest in said partnership, and WHEREAS, said partnership agreement provides for the manner of sale, and WHEREAS, said Nelle C. Reynolds has declared her intent to purchase said interest, said William A. Reynolds waiving his right thereto and evidencing said waiver and consent by signature hereto; NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and other things of value, the receipt of which is hereby acknowledged by signature hereto, the said Dorothy F. Reynolds does hereby sell and transfer her entire interest in said partnership unto the said Nelle C. Reynolds, said transfer to be effective as of January 1, 1940, and the said parties do further agree that: (a) If any liability results to said partnership out of any transaction prior to January 1, 1940, said *160 Dorothy F. Reynolds will return to said Nelle C. Reynolds such sum as her share of said partnership bears to the total liability or liabilities. (b) Said Nelle C. Reynolds will hold said Dorothy F. Reynolds harmless against any liability resulting to her as a result of any partnership transaction after January 1, 1940. (c) In the event said Dorothy F. Reynolds desires to repurchase an interest in said business of William A. Reynolds & Company, said Nelle C. Reynolds hereby agrees to sell her any portion of any interest held by her in said business up to fifty per cent (50%) thereof; that said sale shall be made on the same basis as the within sale; that the election so to do by said Dorothy F. Reynolds shall become ineffective if not exercised within three (3) years from date hereof. A document captioned "Cognovit Note," was signed by Nelle C. Reynolds, which provided for payment to Dorothy F. Reynolds of $21,667.39, payable $7,222.46 during the first year $7,222.46 during the second year $7,222.47 during the third year A document captioned "Partnership Agreement," dated January 13, 1940, was signed by Nelle C. Reynolds and William A. Reynolds; said document provided, *161 in part, as follows: WITNESSETH: (1) That said Nelle C. Reynolds and William A. Reynolds will become and remain partners in the business of conducting a general sales and manufacturers' agency without limitation, and particularly in the rubber and mechanical rubber goods business in the City of Cleveland, Ohio, for the year 1940 and thenceforth until such time as the partnership may be dissolved by mutual consent of the respective parties or by due process of law. (2) Nevertheless, the partnership shall terminate if any partner shall desire its termination and of such desire shall give not less than thirty days written notice to the other party. (3) That said Nelle C. Reynolds will furnish the entire capital; that said William A. Reynolds shall diligently employ himself in the business of the parnership giving full time thereto, and the net profits therefrom shall be divided equally between said partners; that said William A. Reynolds shall receive a drawing account monthly, the amount to be mutually agreed upon and shall have the right to withdraw additional sums from his share of said profits only upon the consent of Nelle C. Reynolds. (4) That said Nelle C. Reynolds shall *162 have the full right to withdraw sums from her share of the partnership profits during the year, but at no time may she reduce the capital of said business below the amount therein at the commencement of business, January 1, 1940, without the consent of said William A. Reynolds. (5) That in the event additional capital is required for said business, it shall be the duty of Nelle C. Reynolds to provide same. * * *
(8) That at year end, each partner shall be entitled to withdraw from said partnership funds his share of the partnership profits for said year. (9) Each partner may make and take contracts for and on behalf of the partnership business and shall be entitled to sign checks against said partnership funds for said partnership purposes and for any other purpose set forth in this agreement. (10) That said Nelle C. Reynolds, in view of her providing the capital for said business, shall be fully entitled to the whole of the good will of said business; that in the event of a dissolution, she shall be entitled to the use of the trade name under which said partnership shall operate, to wit: William A. Reynolds & Company, for a period of five years. During the year 1940 *163 Dorothy F. Reynolds appeared to be a partner of William A. Reynolds & Co., as far as the books were concerned, as during the year she received payments, in general monthly (the last on December 23, 1940), and had drawings charged to her account known as "26-A". At the end of 1940 or early in 1941 this account was changed by striking out the "A" and leaving the "26" which was the drawing account number of Mrs. Reynolds. The amount in this account was charged against the note given by Mrs. Reynolds to Dorothy in payment of the partnership interest alleged to have been bought by her January 1, 1940. Dorothy reported no income from the business and paid no tax thereon for 1940. The partnership alleged to have been formed and operated for the year 1940 was terminated by a series of documents beginning with an agreement executed in January, 1941, and signed by Dorothy Reynolds Swander and Nelle C. Reynolds. This document provided, in part, as follows: WHEREAS, during the year 1939 and years prior thereto said parties together with William A. Reynolds were partners comprising the partnership of William A. Reynolds & Company, and WHEREAS, on or about the 13th day of January, 1940, said *164 Dorothy Reynolds Swander sold to Nelle C. Reynolds her interest in said partnership, effective as of January 1, 1940, which said interest included the capital investment of said Dorothy Reynolds Swander plus her accrued surplus in the gross sum of Twenty-one Thousand Six Hundred Sixty-seven Dollars and Thirty-nine Cents ($21,667.39), and WHEREAS, said Dorothy Reynolds Swander received from said Nelle C. Reynolds a cognovit note in the face amount of Twenty-one Thousand Six Hundred Sixty-seven Dollars and Thirty-nine Cents ($21,667.39) as consideration for said sale, said sum equaling the exact amount of cash which said Dorothy Reynolds Swander had in said business, and WHEREAS, after said sale was consummated, said Nelle C. Reynolds and William A. Reynolds became partners therein with Nelle C. Reynolds contributing the total capital of said partnership, and WHEREAS, it was agreed between the parties that in the event said Dorothy Reynolds Swander should desire to again become a partner that said Nelle C. Reynolds would permit her to do so to the extent of fifty per cent (50%) of the interest of said Nelle C. Reynolds upon the same terms and conditions as existed in the purchase *165 by said Nelle C. Reynolds from Dorothy Reynolds Swander which were in terms of payment from one party to the other of the amount of capital and surplus held by said party in said business at the time of sale, and WHEREAS, said William A. Reynolds is withdrawing from the partnership existing between him and Nelle C. Reynolds for the year 1940, said withdrawal to be effective January 1, 1941, and WHEREAS, the total capital including surplus of said Nelle C. Reynolds in said business as of January 1, 1941 is Twenty-four Thousand Nine Hundred Five Dollars and Thirty-seven Cents ($24,905.37), and WHEREAS, said Dorothy Reynolds Swander desires and hereby elects to purchase a one-third interest in said business. NOW, THEREFORE, in consideration of the sum of Eight Thousand Three Hundred One Dollars and Seventy-nine Cents ($8,301.79) (which shall be credited by said Dorothy Reynolds Swander on said note from Nelle C. Reynolds to Dorothy Reynolds Swander in the amount of $21,667.39) said Nelle C. Reynolds hereby sells and transfers a one-third interest in said business unto said Dorothy Reynolds Swander and agrees to enter into a partnership agreement with her whereby said Dorothy Reynolds *166 Swander will own a one-third interest in said business and a two-thirds interest shall be owned by said Nelle C. Reynolds, and said parties do further agree that in the event that any liabilities accrue to the partnership existing prior to January 1, 1941, which are not on the books of said company at said date and which may be exercised against the assets of the new partnership, said Nelle C. Reynolds will hold said new partnership assets harmless and will cause to be paid personally or otherwise said liability or liabilities. A document captioned "Partnership Agreement", was signed by Nelle C. Reynolds and Dorothy Reynolds Swander in July 1941. Said document provided, in part, as follows: WHEREAS, That (a) Said Nelle C. Reynolds and William A. Reynolds, during the year 1940, were partners in the partnership of William A. Reynolds & Company; that said partnership has been duly dissolved by the withdrawal therefrom by the said William A. Reynolds as a partner; that Nelle C. Reynolds represents that as a result of agreements existing between herself and William A. Reynolds, she retains the good will and the right to use the trade name of said partnership; (b) It is the mutual *167 desire of said parties signatory hereto to become partners in the conducting of said William A. Reynolds & Company and the continuation of said business. NOW, THEREFORE, said parties do hereby enter into the following agreement of partnership, effective January 1, 1941. WITNESSETH: (1) That said Nelle C. Reynolds and Dorothy Reynolds Swander will become and remain partners in the business of conducting a general sales and manufacturers' agency without limitation, and particularly in the rubber and mechanical rubber goods business in the City of Cleveland, Ohio, for the year 1941 and thenceforth until such time as the partnership may be dissolved by mutual consent of the respective parties or by due process of law. (2) Nevertheless, the partnership shall terminate if any partner shall desire its termination and of such desire shall give not less than thirty days written notice to the other party. (3) That said Nelle C. Reynolds will furnish two-thirds (2/3) of the capital of said business and Dorothy Reynolds Swander will furnish one-third (1/3) of the capital of said business, and the net profits resulting therefrom shall be divided in like portions. (4) That in the event *168 additional capital is required for said business, it shall be the duty of said parties to provide same in the above proportions. A document captioned "Certificate", dated July 31, 1941, was filed on October 9, 1941, with the Clerk of Courts for Cuyahoga County, Ohio, which stated, in effect, that the firm of William A. Reynolds & Co. was composed only of Nelle C. Reynolds and Dorothy R. Swander. The document was signed by both parties. William A. Reynolds & Co., from the beginning, purchased merchandise on what is known as regular rubber manufacturers' terms, 2 per cent 10, and 2 per cent 15 days. The customers were sold on the basis of 2 per cent 15, and 2 per cent 25 days. The selling in William A. Reynolds & Co. was conducted principally by manufacturers' agents located in various cities outside of Cleveland. It was not necessary to advance capital to such agents as they were already established. Agents were paid their commissions on the 9th day of the month following the sale. William A. Reynolds & Co. carried no inventory in connection with its buying and selling. It did no manufacturing. A bank account with the Cleveland Trust Co. was opened for William A. Reynolds & Co. *169 in 1937. William A. Reynolds, Nelle C. Reynolds and A. M. Beebe were authorized to draw against this account. The certificate of Authority to Move Partnership Funds, filed with the Cleveland Trust Co., stated that the members of the alleged partnership of the William A. Reynolds & Co. were as follows: William A. Reynolds, Nelle C. Reynolds and Dorothy S. Reynolds. However, the signature cards filed with the bank were signed only by William A. and Nelle C. Reynolds with the statement stamped on said cards that "either may draw". No authority to draw against said account was given to Dorothy Reynolds. The foregoing arrangement with the Cleveland Trust Co. remained in force until September 3, 1941, when a new certificate of authority was executed, stating that Nelle C. Reynolds and Dorothy R. Swander were all of the members of the alleged partnership of William A. Reynolds & Co. Authority to draw against said account was given to Nelle C. Reynolds, Dorothy R. Swander, A. M. Beebe and William A. Reynolds.
At all times the general management and control of the William A. Reynolds & Co. has been in the hands of petitioner. Petitioner, at times, consults with his wife and daughter, *170 but his decisions are final. The wife and daughter take no initiative in the operation of the business. The basic factor in the business of William A. Reynolds & Co. is the ability to work out specific and special problems for people that are in the business of assembling such things as refrigerators, vacuum cleaners, etc., plus the buyer's friendship. When the business started, it was the friendship, and knowledge of people in the big companies, of petitioner and A. H. Basler that was important.the personnel of the companies all know the petitioner. He spends about one-third of his time calling on customers. The business is very unique. Petitioner holds two degrees in civil engineering. Neither Nelle C. Reynolds nor Dorothy F. Reynolds are engineers or have any experience in business. Nelle C. Reynolds participated in the entertainment of customers and suppliers of the William A. Reynolds & Co. Funds received by Mrs. Reynolds and by Dorothy F. Reynolds, from William A. Reynolds & Co., both before and after Dorothy's marriage to Dan R. Swander, Jr., were deposited in bank accounts carried jointly with petitioner. He did not check on the account which was joint with Dorothy. Neither *171 the wife nor daughter had any source of income other than the "partnership," except insignificant dividends from small investments. The wife did not put any of her own funds into the corporation originally. Money was borrowed from rubber companies several times during the life of the corporation, $10,000 at one time, $5,000 twice. No money was borrowed by the business during 1940 or 1941. It was not needed. During 1940 and 1941 the business had earnings as follows: 1940
1941
Merchandise sales less
allowances
$322,280.16
$576,316.72
Cost of sales: Merchan-
dise
269,406.86
480,703.76
Gross profit
$ 52,873.30
$ 95,612.96
Sales: Molds (less cost)
247.50
188.75
Commissions earned
48,004.86
71,437.64
Discounts earned
9,845.26
Recovery of bad debts
5.13
Total gross income
$101,125.66
$177,189.74
Net profit
$ 63,946.47
$ 51,807.72
Opinion A great many cases have been decided involving the "family partnership." It would serve no purpose to attempt to examine or compare them in detail with the instant matter. After much litigation, and after the trial and briefing of this case (except a supplemental brief by the petitioner), the Supreme *172 Court of the United States decided Commissioner v. Tower, 327 U.S. 280 (February 25, 1946). Therein we appear to be given some general guiding principles in such matters. The Court holds that validity of stock-transfer and partnership under state law is not conclusive on the question of Federal tax law; that the principle that a taxpayer may avoid taxes by legal means does not bar proof of purpose of reducing taxes as bearing upon reality of partnership; that the pivotal question is not simply who owned a share of the capital, but who earned the income, so the question of whether gift is conditional or absolute need not be determined; and the Court further says: There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. *173 A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the Federal revenue laws. * * * For if under circumstances such as those now before us, the end result of the creation of a husband-wife partnership, though valid under state laws, is that income produced by the husband's efforts continues to be used for the same business and family purposes as before the partnership, failure to tax it as the husband's income would frustrate the purpose of 26 U.S.C. § 22(a). By the simple expedient of drawing up papers, single tax earnings cannot be divided into two tax units and surtaxes cannot be thus avoided. We are plainly required to consider the instant case in the light of the above principles. Doing so, we have come to the conclusion that the petitioner has not shown himself not subject to taxation upon the "Partnership" *174 income in 1940 and 1941. The business here examined was at all times under the management of the petitioner, as were withdrawals placed in joint accounts. The wife and daughter contributed nothing to management, in effect, nothing in the way of services. No showing is made that entertainment by the wife is of such extent or value as to convince that it should weigh here, and the daughter only "worked there some," and did not participate in management. Neither of them (during the preceding "partnership" could involve a liability of more than $100. During the 1940 arrangement Nelle C. Reynolds could not reduce capital without petitioner's consent. We can not but view the business other than conducted by the petitioner himself, so far as services rendered is concerned. "My business is very unique," the petitioner testified. He has "a pretty broad and comprehensive experience in the rubber business," and the facts show clearly that the business is specialized in nature. Without the petitioner, it could obviously not be successfully conducted by the wife and daughter. In short, through his education, long experience, contacts, friendships, and ability, he produced the income involved. Though *175 attempt is made to demonstrate that capital plays an important role, we think the opposite appears. The initial capital was not large. No showing is made of any borrowings after the termination of the corporation during any partnership prior to the taxable year, and it affirmatively appears that none was borrowed during the taxable years. It "was not needed." Though bills were paid to commission men before collections, the limited capital on hand appears in general to have been sufficient. There were no inventories, and none claimed. Clearly this is not a case involving conduct of a business requiring large amounts of capital. The income of the taxable years was almost one-half from commissions - in 1940 about $48,000 as against approximately $52,000 gross profit from sales, while in 1941 it is roughly $71,000 from commissions (and $9,845.26 from discounts earned) against approximately $95,000 gross profits from sales. Noting that the profits from sales arise without inventories, we conclude that the personal element furnished or managed by the petitioner was the moving cause of income in this case, and that, no services which were "vital" being furnished by the wife or daughter, participation *176 by them in the partnership can not be based on anything but capital, and that capital is not of such importance as to authorize their inclusion in a partnership for the present purpose. However, did the wife in 1940 and wife and daughter in 1941, contribute such capital as in general to justify recognition of partnership, within the guides of the Tower case? In effect, the contention is that the wife's contribution stemmed from a gift to her, after about September 1935, and prior to January 1, 1936, of 48 shares of the corporate stock, purchase by her of three other shares, receipt of a distribution in liquidation of that corporation in February 1937, and devotion thereof to the partnership which then began, and continued up to the first taxable year here involved; while for the daughter's position it is urged that she put in originally about $3,000 of her own, and borrowed about $7,600 from her mother, from the liquidation distribution. In substance, it is argued that the gift of stock is so far removed in point of time from the first taxable year, and so complete and valid in passing title to the wife, as to require a conclusion that the wife made her own capital contribution, *177 not to be ascribed to the petitioner. Yet, the Tower case indicates plainly that a "stock-transfer * * * sufficient under state law to pass title to the wife" is not conclusive on the question of Federal income tax. The Court found it unnecessary to pass upon whether the gift there involved was conditional and therefore incomplete. Therefore, we are constrained not to give to the stock-transfer here the weight desired by petitioner. No doubt remoteness in time of gift from the partnership in question is an element for logical consideration. Yet, here it appears to us that the remoteness is to be computed, not from January 1940, but from the beginning for the first "partnership" about February 1, 1936, for the situation does not essentially change, so far as the petitioner and the present question is concerned, thereafter. The transfer of stock, therefore, appears somewhat more than a year, possibly a year and four months, prior to the 1937 partnership. In the light of the conclusion in the Tower case, that the question is, not who owned the capital, but who earned the income, we must and do conclude here that the transfer of the 48 shares of stock is not convincing that petitioner *178 did not earn the income. The three shares purchased by the wife do not alter the conclusion. She had no source of income, except her husband, and contributed none of her own money originally to the corporation. If a wife (or a daughter), in a proper case, "invests capital originating with her," such capital is to be considered. Origin is made a high factor. Here, we think origin is seen in the husband, as to contributions shown on the books both as to wife and daughter. The daughter's contribution to the extent of about $7,600 comes from the mother, therefore is in no different category than that of Nelle C. Reynolds. As to about $3,000, however, effort is made to show origin in Liberty bonds and gifts from grandparents, used by the parents and replaced by application to the daughter's capital account in 1937 of that much of the mother's capital contribution. The condition of the record, however, precludes a conclusion to that effect. Questions indicate a theory that the parents had used about $3,000 of the child's own property, and replaced it in the manner above stated. But we may not so find. It appears that, to some unknown extent, the child had had some Liberty bonds, also some *179 gifts from grandparents. How much of each does not appear. We can not say that the Liberty bonds came from the grandparents. Perhaps their origin was the petitioner. He referred to the $3,000 as a debt repaid, no note being given. This evidence is too inconclusive to form basis for a finding that the daughter had, originating in her grandparents, $3,000 for which the parents owed her, and repaid her at time of formation of partnership. Even if there had been some such basis for a moral obligation to a child, we think payment by the father and mother in the manner indicated to be contended, would leave them as the origin of the contribution to capital. We conclude that no such contribution, either of capital or services, has been shown here as should properly be considered as reason for division of the income earned by the "very unique" business conducted by the petitioner, and by him designated "my business." Moreover, the changes made in the organization appear unreal, and indicative of the slight importance of capital changes, and real importance of petitioner's management. The change from the three-way arrangement beginning in 1937 to a two-way "partnership" did not become effective *180 by signing of articles of partnership until January 1941, yet it is dated back to January 13, 1940. In fact, Dorothy, though allegedly taken out of the organization, drew funds throughout the year, the last on December 23, 1940. And at the same time, in effect, a new arrangement beginning January 1941, eliminating petitioner as of January 1, 1941, and reinstating Dorothy was in form organized. Thus it appears that the purported arrangement for 1940 between husband and wife alone, never really became effective. All this indicates to us the artificiality of the forms used, and of the capital set up on books, as against the substantive fact that the business continued constantly to operate and increase, under petitioner's management and guidance. The different arrangements, some dated, regardless as to when drawn, under all the facts, are concerned primarily with division of profits (liability for losses is not mentioned), rather than with conduct of the business. In short, they are not convincing of a real business purpose aside from division of interests. Though two other issues, as to a profitsharing trust, and legal expenses, were originally submitted, petitioner does not brief *181 them, but specifically states that if petitioner is taxable, as the respondent contends, it follows that the gross income should include the amount involved in the profit-sharing trust, and the expenses. Therefore, no further mention is made of those issues. Decision will be entered for the respondent.